Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 979 | **DATE** | 6/4/2002 |
| **CASE TITLE** | Luttrell et al vs. O'Connor Chevrolet, Inc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 6/19/2002 at 9:45 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Defendants' motion (Doc 39-1) for summary judgment is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 0 5 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | 43 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 JUN -4 PM 2:42 | date mailed notice | |
| SCT | courtroom deputy's initials | FILED | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEBRA B. LUTTRELL and )
KIMBERLY A. OLSON, )
)
Plaintiffs, )
)
vs. ) 01 C 0979
)
O'CONNOR CHEVROLET, INC., an )
Illinois corporation; CARYL STIPLUN )
O'CONNOR, individually; and )
TIMOTHY O'CONNOR, individually, )
)
Defendants. )

**DOCKETED**
JUN 5 2002

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the court on the motion for summary judgment of Defendants O'Connor Chevrolet, Inc. ("O'Connor Chevrolet"), Caryl Stipulin O'Connor ("Caryl O'Connor"), and Timothy O'Connor. For the reasons set forth below, the motion is denied in part and granted in part.

### BACKGROUND

Plaintiff Debra B. Luttrell ("Luttrell") was hired by O'Connor Chevrolet as its Office Manager on September 14, 1998. Plaintiff Kimberly A. Olson ("Olson") was hired by Defendants in January 1999 as a Business Development Manager. Although

as Business Development Manager Olson worked primarily out of an office in Orland Park, her job required her to often visit O'Connor Chevrolet. Olson was subsequently transferred to an office at O'Connor Chevrolet sometime later that year. Defendant Timothy O'Connor was, at all times relevant to this lawsuit, a sales manager at O'Connor Chevrolet.

Robert O'Connor ("Bob O'Connor"), Caryl O'Connor's husband, was the dealer-principal of O'Connor Chevrolet until his death on May 20, 1999. The parties dispute who became the dealer-principal upon Bob O'Connor's death. Plaintiffs assert that William Marks ("Bill Marks"), a long-time manager at O'Connor Chevrolet, became dealer-principal. Plaintiffs support their assertion with a memorandum drafted by Caryl O'Connor and distributed to all employees. The memorandum informs employees that Bill Marks was appointed dealer-operator and partner in O'Connor Chevrolet and that employees are to be accountable to Bill Marks for all daily operations. The memorandum additionally instructs that Bill Marks was, in turn, accountable to Caryl O'Connor. Caryl O'Connor asserts that, upon her husband's death, she obtained widow's rights to the dealership and the opportunity to petition to become dealer-principal at the end of one year. She subsequently petitioned for the position and was appointed dealer-principal.

Luttrell and Olson claim that, while working at O'Connor Chevrolet, they were exposed to constant sexual harassment by Timothy O'Connor. The factual basis for this claim is set forth in more detail below but, in brief, Luttrell and Olson allege that

Timothy O'Connor: touched them in inappropriate ways; made offensive comments to them about their appearance and made sexual advances; invited them repeatedly to participate in an Internet pornographic website; and exposed them repeatedly to pornography he downloaded onto one of the computers at O'Connor Chevrolet. They further claim that they were fired in retaliation for complaining about Timothy O'Connor's behavior; Luttrell's employment was terminated on December 27, 1999 and Olson's employment terminated in January 2000.

In addition, Luttrell claims that Defendants slandered her. She alleges that after she left O'Connor Chevrolet, Defendants, when contacted by Luttrell's potential employers for references, told such individuals that she had been fired because she was "sleeping with the dealer-principal" and because she had embezzled money from O'Connor Chevrolet. Luttrell further alleges that Defendants slandered her in retaliation for her complaints about sexual harassment by making these same comments to potential employers who would contact O'Connor Chevrolet as one of Luttrell's references listed on her job applications.

Luttrell and Olson commenced this action on February 12, 2002. They filed an amended complaint on May 3, 2002. In Counts I and II respectively, Plaintiffs bring claims of "hostile work environment" sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), against O'Connor Chevrolet. Plaintiffs also bring a number of state law claims pursuant to this court's supplemental jurisdiction: two claims under the Illinois Human

Rights Act in Counts III and IV; assault and battery in Count V; a claim of negligent training, supervision and retention in Count VI; and slander in Count VII. On July 27, 2001, Defendants moved to dismiss several of Plaintiffs' claims. On September 18, 2001, this court dismissed: both claims under the Illinois Human Rights Act; the claim of negligent training, supervision and retention was dismissed; and the assault and battery claim as to O'Connor Chevrolet. Defendants O'Connor Chevrolet, Caryl O'Connor and Timothy O'Connor now move for summary judgment on all remaining claims.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A

"genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant." Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing the record, the court must draw all reasonable inferences in favor of the non-movant; however, the court is "not required to draw every conceivable inference from the record -- only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). With these legal principles in mind, the court turns to the merits of Defendants' motion, addressing each claim in turn.

## DISCUSSION

We first address Defendants' arguments regarding Plaintiffs' sexual harassment claims. To make out a prima facie case for hostile work environment sexual harassment, Plaintiffs must show that: (1) they were members of a protected class; (2) each of them was subjected to unwelcome verbal or physical conduct of a sexual nature; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive to alter the conditions of each of their employment; and (5) the employer knew or should have known of the harassment and unreasonably failed to take appropriate corrective action. Crenshaw v. Delray Farms, Inc., 968 F. Supp. 1300, 1304 (N.D. Ill. 1997). Defendants argue that Plaintiffs cannot make out the fourth and fifth elements.

For Plaintiffs' claim of hostile work environment to be actionable under Title VII, the conduct of which they complain must be sufficiently severe or pervasive as to alter the conditions of their employment and create an abusive working environment. R.R. Donnelley & Sons, 42 F.3d 439, 443 (7th Cir. 1994). Plaintiffs must show that, as a result of Timothy O'Connor's conduct, their working environment was both objectively and subjectively hostile. Adusumilli v. City of Chicago, 164 F.3d 353, 361 (7th Cir. 1998).

As to the subjective prong, we conclude that there is enough evidence in the record from which a reasonable trier of fact could conclude that both Luttrell and Olson found Timothy O'Connor's alleged behavior subjectively hostile. Plaintiffs testified that they would tell Timothy O'Connor to stop when he behaved offensively toward them. They further testified that his conduct upset them. Luttrell complained to Bill Marks, her immediate supervisor, about Timothy O'Connor's conduct. There is also evidence that Olson frequently complained to her immediate supervisors, Bill Marks and Gary Swearingin, about the complained-of conduct. This evidence is at least sufficient to create a factual question on the issue of whether Luttrell and Olson subjectively perceived Timothy O'Connor's conduct as hostile and abusive. Dey v. Colt Const. & Dev. Co., 28 F.3d 1446, 1454 (7th Cir. 1994).

We next consider whether the conduct at issue is objectively hostile. To be objectively hostile, a work environment would need to be found hostile or abusive to a reasonable person. Adusumilli, 164 F.3d at 361. To determine whether Luttrell and

Olson have made the requisite showing with regard to the objective prong, we must consider the totality of the circumstances, including "the frequency of the [harassing] conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [Luttrell's and Olson's] work performance." Farragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1988). Simple teasing, offhand comments, and isolated instances – unless extremely serious – will not amount to discriminatory changes. Id. Additionally, because we must consider all the circumstances in their totality, we "should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive." Mason v. Southern Ill. Univ., 233 F.3d 1036, 1045 (7th Cir. 2000).

Applying these standards to the facts in the record, we find that Plaintiffs have raised enough evidence to create a genuine question as to whether the complained-of conduct was severe and pervasive under Title VII. We first consider the evidence pertaining to Luttrell. Luttrell stated that Timothy O'Connor, on numerous occasions, lay on her desk and asked her to spank him. When he did so, he often rubbed against her shoulder. This happened first in October 1998. Additionally, Luttrell testified that Timothy O'Connor would rub against her shoulder when she was at the office copy machine. Each time he did so, she testified that he would make some comment about her appearance. According to Luttrell, Timothy O'Connor would, at times in front of other O'Connor Chevrolet employees, remark about her appearance, particularly about

the high heels she often wore. He also asked her, in front of other employees, to pose naked on the internet, to participate in a pornographic website, and to walk on his back while naked and wearing high heels. There is evidence in the record that Timothy O'Connor would frequently go to Luttrell's desk while she was eating lunch and take some of her food, always putting his hand on her back when he did so. Additionally, Luttrell testified that, Timothy O'Connor would rub her back and make offensive comments to her when she went to a certain area in the office to work on the sales commission checks. She worked on sales commission checks about once a month. Luttrell also testified that, on numerous occasions, Timothy O'Connor exposed her to pornography on the computer in his office.

The evidence pertaining to Olson is of a similar nature. Olson testified that on nearly ten different occasions, Timothy O'Connor also exposed her to pornography on his computer. She further testified that his behavior was a constant problem at O'Connor Chevrolet. She testified that he asked her if she would be on a naked internet website at least ten times. On at least five occasions he explained to her that he knew how to set up such a naked internet website. She testified that he would comment on her appearance at work, and that he would tell her she should wear thinner, higher heels whenever she wore flats or lower heels. Olson testified that Timothy O'Connor often pushed aside her hair while she was eating lunch in the lunchroom for O'Connor Chevrolet employees. According to the record, he engaged in this conduct sometimes privately and other times in front of other employees.

Plaintiffs cannot point to specific dates on which all of the offensive conduct occurred, but this alone does not preclude them from going forward with their case. Both Plaintiffs stated in their depositions that the alleged offensive conduct occurred on a continuous, almost daily basis while they were at O'Connor Chevrolet. Dey, 28 F.3d 1446, 1456-57. We further note that Plaintiffs' testimony as to the occurrence and frequency of the complained of conduct is supported by the testimony of two non-party witnesses, Jamie Trella ("Trella") and Jean Skupien ("Skupien"), who testified that they often observed Timothy O'Connor touching Plaintiffs or heard him make sexually explicit comments and sexual advances towards them. Based on this record, we find that Plaintiffs have raised a genuine issue of material fact as to whether Timothy O'Connor's alleged conduct was severe and pervasive.

We now turn to Defendants' second challenge to Plaintiffs' sexual harassment claim. Defendants argue that Plaintiffs cannot establish O'Connor Chevrolet's liability because they have not met their burden with respect to the fifth element of their prima facie case – that the employer knew or should have known about the harassment and unreasonably failed to take appropriate corrective action. This element is required to impose liability on an employer for co-employee sexual harassment, the type at issue in this case. Guess v. Bethlehem Steel Corp., 913 F.2d 463, 464 (7th Cir. 1990). Specifically, Defendants argue that Plaintiffs cannot establish that O'Connor Chevrolet as employer knew or should have known of the harassment because there is no evidence that Caryl O'Connor knew of the harassment. They argue that, without this knowledge,

Caryl O'Connor could not take corrective action. In support of their argument, they point out that neither Luttrell nor Olson ever complained about Timothy O'Connor's conduct to Caryl O'Connor. Nor did any other O'Connor Chevrolet employees inform her of such conduct on the part of her son.

Defendants' argument misses the mark. As stated above, the record indicates that both Luttrell and Olson complained about Timothy O'Connor's behavior to their respective supervisors. Bill Marks was the immediate supervisor for both Plaintiffs, and Gary Swearingin was a second supervisor for Olson. Though Defendants deny Plaintiffs' allegations that Plaintiffs complained to their supervisors, they do not controvert these allegations with evidence in the record. Additionally, the memorandum Caryl O'Connor sent to all employees instructed them to be accountable to Bill Marks for daily operations. A reasonable factfinder could find that this meant all sexual harassment reports were to be reported to Bill Marks. Accordingly, there is evidence in the record to support a finding that O'Connor Chevrolet was put on notice as to Timothy O'Connor's alleged conduct.

Furthermore, Defendants' assertion that Plaintiffs did not fill out any form complaints about Timothy O'Connor's alleged behavior does not overcome the evidence indicating that O'Connor Chevrolet was on notice of the alleged conduct such as to mandate summary judgment. The parties dispute whether such forms were available at the time of Plaintiffs' employment. In addition, despite Defendants' claim that there was a specific policy on sexual harassment, the evidence in the record

indicates otherwise. The employee handbook in effect during Plaintiffs' employment does not include a procedure for employees to follow if they wish to complain of sexual harassment; it merely lists sexual harassment as one example of unacceptable conduct. Even if such forms were in existence, it is not clear from the record that they were to be completed by employees themselves or their supervisors. Nor does the record indicate if a particular person was designated as the individual to receive and address employee complaints of sexual harassment; there is no evidence indicating all such complaints had to be made to Caryl O'Connor. Though Defendants expanded on the topic of sexual harassment in their new employee handbook, that handbook was not distributed until Plaintiffs had already been fired. Thus, there is enough evidence in the record from which a reasonable trier of fact may find that O'Connor Chevrolet was on notice of the complained of conduct.

Moreover, the evidence in the record reflects that, despite having been put on notice of the alleged offensive conduct, Defendants did nothing to address Plaintiffs' complaints. Indeed, the record indicates that, at least with regard to Olson, the extent of her supervisors' response to her complaint was that she had to deal with the offensive conduct because Timothy O'Connor was the owner's son. "A reasonable factfinder could find that the [Defendant's] failure to take any steps to investigate Plaintiff[s'] allegations or to act on them in any way constituted negligence." Haugerud v. Amery School Dist., 259 F.3d 678, 693 (7th Cir. 2001). Thus, summary judgment is inappropriate on this ground as well.

Because we find that the record includes evidence from which a reasonable jury could ultimately conclude that O'Connor Chevrolet is liable for hostile work environment sexual harassment as to both Plaintiffs, we deny Defendants' motion for summary judgment on Count I.

We now turn to Defendants' arguments regarding Count II, Plaintiffs' claims of retaliation. To make out a prima facie claim of retaliation under Title VII, Plaintiffs must establish that: (1) they engaged in statutorily protected expression; (2) they suffered an adverse action by their employer; and (3) there is a causal link between the protected expression and the adverse action. Adusumilli, 164 F.3d at 362. Plaintiffs claim that the termination of their employment was in retaliation for their complaints of sexual harassment.

Defendants argue that neither Plaintiff can make out the third element of her prima facie case. Having reviewed the record, we agree.[1] To meet the causal link requirement for retaliation, Plaintiffs must demonstrate that O'Connor Chevrolet "would not have taken the adverse action 'but for' the protected expression." McKenzie v. Illinois Dept. of Trans., 92 F.3d 473, 483 (7th Cir. 1996). Plaintiffs admit that Caryl O'Connor made the decision to terminate both Luttrell's and Olson's employment.

---

[1] We note that the Seventh Circuit has not decided whether the types of informal complaints Plaintiffs made in this case constitute protected expression for the purposes of a Title VII claim of retaliation. Krause v. City of LaCrosse, 246 F.3d 995, 1000 (7th Cir. 2001). We need not decide this issue, however, because this element of Plaintiffs' case is not disputed by Defendants and because we find that Plaintiffs cannot establish the third element of their prima facie case.

Plaintiffs cannot show that Caryl O'Connor would not have terminated their employment had they not complained of sexual harassment. The record does not support that Caryl O'Connor had any knowledge of Plaintiffs' complaints. The only evidence arguably supporting such a link would be Olson's testimony that she "believed" that Bill Marks told Caryl O'Connor she had complained about Timothy O'Connor's behavior. (Pl. Exh. 2 at 67.). Yet Olson's belief alone is much too speculative to create a genuine issue of material fact. Because there is a lack of evidence linking the decisionmaker in this case to the Plaintiffs' complaints of sexual harassment, Defendants' motion for summary judgment is granted as to Count II. Maarouf v. Walker Manufacturing Co., 210 F.3d 750, 755 (7th Cir. 2000) (absent knowledge on decisionmaker's part of protected activity plaintiff lacks causal link between termination and complaint).

Luttrell also alleges in her complaint that Defendants retaliated against her for objecting to the alleged sexual harassment by slandering her to the car dealership community after she left O'Connor Chevrolet. She appears to have abandoned this claim, however, for in her opposition papers she only addresses retaliation in the form of employment termination. We express doubt that Luttrell would be able to state a retaliation claim under Title VII based on these allegations. This circuit has firmly established that for there to be an adverse employment action, an employee must suffer a job loss, demotion or other negative job consequence. Sweeney v. West, 149 F.3d 550, 556 (7th Cir. 1998). We recognize that adverse employment action may take the

form of vicious gossip initiated by an employer while the employee *was still working* for the employer, Quiroz v. Hartgrove Hosp., 1999 WL 281343, at *12 (N.D. Ill. Mar. 24, 1999); Utomi v. Cook Cnty., 2001 WL 914465, at *4 (N.D. Ill. 2001), but Luttrell neither argues nor cites to any support for the proposition that the alleged defamatory comments made *after* the termination of her employment could constitute an adverse employment action in the context of a Title VII retaliation claim. In any event, such a claim would fail in this case for the reasons set forth in this court's discussion of Luttrell's slander claim.[2]

We next address Defendants' arguments in support of their motion for summary judgment as to Count VII, Luttrell's state law claim of slander. Luttrell alleges that Defendants stated to her potential employers and others in the car dealership community

---

[2] We note that, even if we had found that Plaintiffs' had made out a prima facie case of retaliation, we would still grant Defendants' motion as to this Count. Defendants have articulated legitimate reasons for terminating Plaintiffs' employment and, based on the record, we find that Plaintiffs have not met their burden of showing these reasons are pretextual. Pafford v. Herman, 148 F.3d 658, 670 (7th Cir. 1998). The evidence indicates that O'Connor Chevrolet was downsizing in general during the time Plaintiffs were fired. Additionally, when Olson was transferred to the O'Connor Chevrolet office, her job required her to bring in business via telephone solicitations, and Olson admits that there is only proof that one of the people she called bought a car from O'Connor Chevrolet. Further, although Luttrell disputes some of the reasons Defendants advance for terminating her employment, she admits others, such as that Caryl O'Connor received a warning from Standard Bank to take a greater interest in the company's financials because of excessive overdrafts and that in December 1999 O'Connor Chevrolet's auditors visited Caryl O'Connor and told her they were having problems getting documents from Luttrell that were necessary for the preparation of income tax returns.

that she was fired because she: (1) slept with O'Connor Chevrolet's dealer-principal and (2) embezzled monies from O'Connor Chevrolet. To prove a claim of defamation under Illinois law, a plaintiff must establish that the defendant made a false statement concerning the plaintiff, that there was an unprivileged publication of the defamatory statement to a third party by defendant, and that the plaintiff was damaged. Dubinsky v. United Airlines Master Executive Council, et. al., 303 Ill. App.3d 317, 323, 708 N.E.2d 441, 446-67 (Ill. App. Ct. 1999). Proof of publication "requires that the defamatory statements were communicated to some person other than the plaintiff." Vickers v. Abbott Laboratories, 308 Ill. App.3d 393, 399, 719 N.E.2d 1101, 1107 (Ill. App. Ct. 1999). Defendants argue that Luttrell's defamation claim fails at this stage of the litigation because she has produced no admissible evidence from which a reasonable factfinder could conclude that Defendants published the alleged statements to third parties.

As an initial matter, the court points out that although Luttrell alleges in her complaint that, in addition to Timothy O'Connor and Caryl O'Connor, other employees of The O'Connor Group defamed her, she identifies no other such employees. Additionally, in their papers, the parties only address alleged defamatory statements by Timothy O'Connor and Caryl O'Connor, and do not address any such statements made by any identified employees of The O'Connor Group or O'Connor Chevrolet. We follow suit and analyze only whether the record supports a conclusion that Timothy O'Connor or Caryl O'Connor made the alleged defamatory statements.

We first consider the evidence regarding Timothy O'Connor. In her opposition papers, Luttrell does not present any evidence in support of her allegation that Timothy O'Connor made defamatory statements about her. Indeed, Luttrell admits that she is not aware of Timothy O'Connor making any defamatory comments about her. Accordingly, we grant Defendants' motion insofar as it relates to Timothy O'Connor.

We next assess whether the evidence in the record generates a genuine question as to whether Caryl O'Connor made the alleged defamatory statements. We begin by noting that the crux of Luttrell's claim is that she was defamed when potential employers contacted O'Connor Chevrolet as a reference for Luttrell. Yet there is no evidence in the record supporting that Caryl O'Connor, or any other O'Connor Chevrolet employee for that matter, ever provided any of Luttrell's potential employers with such reference. Luttrell admits that O'Connor Chevrolet has a policy whereby one person handles all questions about references in response to a written request. There is no evidence of such a written request pertaining to Luttrell. Additionally, Caryl O'Connor testified that she was never contacted about a reference for Luttrell. Although Luttrell denied this in her response, she provided no citation to the record for her denial and, accordingly, that statement is deemed admitted pursuant to Local Rule 56.1. Furthermore, though Luttrell asserts that Gail Thompson, an individual who helped her with her job search, told Luttrell that Luttrell did not get some jobs due to bad references, this evidence is inadmissible hearsay and, even if it were admissible, there is no evidence as to who made those particular references. As such, the record is

devoid of evidence supporting a conclusion that Caryl O'Connor defamed Luttrell in the context of potential employers contacting her for references.

The other evidence Luttrell points to as supporting a finding that Caryl O'Connor made the alleged defamatory statements similarly fails to raise a genuine issue for trial and, furthermore, constitutes inadmissible hearsay. First, Luttrell claims that she heard from one individual, Cathy Lowe ("Lowe"), that another individual, Kathy Najir ("Najir"), had gone to the offices of Evergreen Finance for an interview. Lowe told Luttrell that Najir told her she learned at that interview that Luttrell was sleeping with O'Connor Chevrolet's dealer-principal and that she was stealing. There is no evidence in the record as to who may have provided Najir with this information. Even if there was, this evidence is clearly hearsay and Luttrell does not argue that it falls within an exception to the hearsay rule.

In support of her defamation claim, Luttrell also advances her testimony regarding James Roche ("Roche"), a lawyer who has represented O'Connor Chevrolet in some matters. Luttrell testified that she called Roche to discuss the rumors about her in the car dealership community, and that he told Luttrell that he would speak to Caryl O'Connor about the rumors. Luttrell asserts that this conversation establishes that Caryl O'Connor made the alleged defamatory statements. We disagree.

Luttrell testified that Roche did not tell her that he actually heard Caryl O'Connor make any derogatory comments about her. Furthermore, Luttrell's conversation with Roche is inadmissible hearsay. Luttrell tries to overcome this hearsay obstacle by

arguing that Roche is Caryl O'Connor's agent, but we remain unpersuaded. The mere fact that Roche may represent O'Connor Chevrolet in some matters does not mean he is Caryl O'Connor's personal lawyer or otherwise her agent. The one case Luttrell cites in support, Dailey v. Societe Generale, 915 F. Supp. 1315 (S.D.N.Y. 1996), is unpersuasive. The lawyer in that case was the Defendants' general counsel; Roche is not O'Connor Chevrolet's general counsel. Additionally, the evidence shows that Roche was not Caryl O'Connor's personal attorney. We also note that, according to Luttrell's testimony, Roche told her to sue Caryl O'Connor; it strains reason that Roche, while he was Caryl O'Connor's legal representative, advised another party to institute legal action against her. Moreover, putting aside the hearsay issue, the facts that Roche may have been aware of the rumors regarding Luttrell and that he may have spoken to Caryl O'Connor about those rumors, does not establish that Caryl O'Connor was the individual behind rumors.

The evidence Luttrell presents regarding Najir and Roche does not support a finding that Caryl O'Connor made the alleged defamatory statements about Luttrell. At most, this evidence indicates that there were rumors in the car dealership community about Luttrell, but "rumors bearing derogatory messages . . . are not defamatory unless instigated by the defendant." Talanda v. KFC Nat'l Management Co., 1996 WL 413477, at *15 (N.D. Ill. June 3, 1996), *rev'd on other grounds*. Because this evidence does not provide a basis from which a reasonable factfinder could conclude that Caryl O'Connor made the alleged defamatory statements, this evidence does not get Luttrell's

slander claim past summary judgment. See Harris v. Bethesda Lutheran Homes, Inc., 2001 WL 877321, at *7 (N.D. Ill. Aug. 3, 2001); Talanda, 1996 WL 413477, at *15 (N.D. Ill. June 3, 1996) (quoting Scherer v. Rockwell Int'l Corp., 766 F. Supp. 593, 607 (N.D. Ill. 1991). Accordingly, we find that Luttrell cannot proceed with Count VII.

Finally, we turn to Defendants' arguments regarding Count V, Luttrell's state law claims of assault and battery against Timothy O'Connor. Defendants' only argument with respect to this Count is that it should be dismissed because there would be no more supplemental jurisdiction over Count V once we had decided Plaintiffs' federal claims. Because we have decided that Plaintiffs' hostile work environment sexual harassment claims survive Defendants' summary judgment motion, however, we retain supplemental jurisdiction over Count V. As Defendants present no other challenges to these claims, we must deny their motion for summary judgment as to Count V.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. The motion is granted as to Counts II and VII. The motion is denied as to Counts I and V.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judg

Dated: JUN - 4 2002

- 19 -